UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHARI S. DRERUP**

       **Plaintiff,**                 Case No. 2:19-cv-3499
                                        JUDGE SARAH D. MORRISON
                                        Magistrate Judge Kimberly A. Jolson

       v.

**NETJETS AVIATION, INC.**

       **Defendant.**

## OPINION AND ORDER

There are currently two pending motions before the Court. First, Defendant NetJets Aviation, Inc. ("NetJets") filed a Motion to Dismiss the Complaint. (ECF No. 6). Second is a Motion to Dismiss the Amended Complaint. (ECF No. 8).[1] Plaintiff has responded to the second-filed motion (ECF No. 9) and Defendant replied (ECF No. 10). Accordingly, this matter is ripe for review. For the reasons stated herein, Defendant's Motion to Dismiss the Complaint is **DENIED AS MOOT** and its Motion to Dismiss the Amended Complaint is **DENIED**.

**I.**

Plaintiff Shari S. Drerup initiated this action on August 13, 2019, with the filing of a three-count Complaint alleging: 1) sex discrimination, in violation of § 2000e, *et seq.*; 2) sex discrimination, in violation of Ohio Rev. Code §§ 4112.02(A), 4112.99; and 3) aiding and abetting sex discrimination, in violation of Ohio Rev. Code § 4112.02(J). (*See* Compl. ¶¶ 33–50 [ECF No. 1]). On November 4, 2019, Plaintiff filed a three-count Amended Complaint alleging

---

[1] Both the Motion to Dismiss the Complaint and the Motion to Dismiss the Amended Complaint were filed by NetJets and former Defendant Jim Queen, mistakenly referred to as Jim McQueen. (*See* ECF Nos. 6; 8). Plaintiff, however, voluntarily dismissed all claims against former Defendant Queen on December 4, 2019. (ECF No. 9).

the same three claims. (Am. Compl. ¶¶ 34–51 [ECF No. 7]). As this matter is before the Court on a Motion to Dismiss, the Court takes the facts alleged in the Amended Complaint as true; those facts are as follows.

Plaintiff is a pilot and she first applied for a position at NetJets in July 2015. (Am. Compl. ¶¶ 7–8). NetJets advised Plaintiff that she was selected for a two-day interview process in September 2016. (*Id.* ¶ 9). Plaintiff first interviewed with other pilots employed by NetJets and Defendant's Human Resources representatives. (*Id.*). On the second day of the interview, Plaintiff completed a flight simulation for the Citation EXLS aircraft at Flight Safety; Plaintiff passed this simulation despite having never before flown this aircraft. (*Id.*). On November 3, 2016, NetJets extended an offer to Plaintiff for a pilot position. (*Id.* ¶ 10). Plaintiff accepted NetJets' offer. (*See id.* ¶ 11).

Plaintiff trained with 12 other pilots at NetJets' Indoc training for new Embraer Phenom 300 ("Phenom"), which began on December 5, 2016. (*Id.* ¶ 12). Of the 13 pilots in Plaintiff's training class, 10 were male and three were female. (*Id.*). Plaintiff successfully completed the Indoc Phenom training program and she received her gold medal NetJets wings for her uniform jacket. (*Id.* ¶ 13).

Plaintiff attended Phenom training at Flight Safety on February 6, 2017. (*Id.* ¶ 14). NetJets assigned Charles Felton as Plaintiff's simulator and study partner. (*Id.*). Felton had been a pilot and Captain with NetJets for 15 years, flying a Citation X; he was transferring to the Phenom. (*Id.* ¶ 15). Both Plaintiff and Felton "passed the Phenom Aircraft Systems training and Garmin Prodigy training followed by a Federal Aviation Administration ("FAA") oral examination." (*Id.* ¶ 16). After passing this initial training, both Plaintiff and Felton continued to simulator training for the

Phenom, which consisted of nine scheduled sessions that covered FAA required maneuvers and approaches that began on February 15, 2016. (*Id.* ¶ 17).

On February 22, 2017, Plaintiff and Felton began their seventh simulator session. (*Id.* ¶ 19). During the "engine out" procedures of this session, "Plaintiff struggled to maintain control of the aircraft with one engine operating on full power and [the] other engine failed." (*Id.*). Plaintiff submits that "[t]he simulation required a great deal of pressure to push the rudder pedal to the floor in order to keep the nose of the plane from turning and rolling toward the failed engine.' (*Id.*). Prior to this occurrence, Plaintiff had received "5 jet type ratings and never experienced this issue" before engaging in the Phenom simulator training. (*Id.*).

After this session, Plaintiff discussed her difficulty with her instructor Ashley Boyd Messenger. (*Id.* ¶ 21). Messenger stated that he had "never instructed on an airplane that required so much rudder to the floor to keep the aircraft controlled[.]" (*Id.*). Messenger told Plaintiff: "Shari your legs are simply too short. You can't reach fully to the floor with the rudder pedals to control the airplane during single engine operation." (*Id.*). Messenger also wrote: "Shari's stature precludes attaining sufficient control authority" on Plaintiff's training record. (*Id.*).

On the evening of February 22, 2017, Jim Queen, NetJets' Senior Director of Training, called to warn Plaintiff to "do whatever you need to do to pass this check ride. Go to Cincinnati and get a booster seat or some tall shoes." (*Id.* ¶ 22). Queen further informed Plaintiff that if she were too short to fly the Phenom, then she would also be too short to fly any of NetJets' other aircrafts. (*Id.*). Plaintiff told Queen that "she had a type rating in at least two (2) of Defendant NetJets' current fleet" and, thus, was not too short to fly any of NetJets' other planes. (*Id.*). Queen ignored Plaintiff and told her to "make the Phenom work." (*Id.*). Plaintiff subsequently bought

3

"shoes with thicker soles, and back pads to move her closer to the rudder pedals[.]" (*Id.* ¶ 23). Ultimately, neither measure helped correct Plaintiff's issue with the rudder pedals. (*Id.*).

On February 28, 2017, Plaintiff began the FAA check ride. (*Id.* ¶ 24). Plaintiff was successfully completing the ride until the engine failed. (*Id.*). When the engine failed, "Plaintiff was unable to push the full rudder to the floor simply because of her stature because her legs were not long enough." (*Id.*). Consequently, the FAA failed Plaintiff's check ride. (*Id.*). Later that same day, Queen called Plaintiff and asked that, on March 1, 2017, she meet with the Chief Pilot for the Phenom and another pilot that worked for NetJets. (*Id.* ¶ 25). Plaintiff was "blind-sided with her termination" at this meeting. (*Id.* ¶ 26). She was "instructed to immediately turn in her Defendant NetJets' badge, iPad, cell phone, and American Express card. (*Id.*).

Before NetJets terminated Plaintiff, and during training, three male NetJets' employees, who were hired for the December 5, 2016 Phenom orientation, were reassigned to other aircraft because they were too tall to fly the Phenom. (*Id.* ¶ 28). Further, "NetJets did not require the FAA check ride prior to the reassignment of the male pilots as they were simply reassigned when it was realized that the male pilots were not able to fly the Phenom because of their stature because they were too tall." (*Id.* ¶ 29). Plaintiff, however, was required to take an FAA check ride after NetJets was made aware that Plaintiff was too short for the Phenom. (*Id.*).

Instead of terminating her employment, Plaintiff submits that NetJets could have reassigned her to another aircraft as it had done for three male employees. (*Id.* ¶ 30). NetJets had scheduled trainings for two different aircrafts that Plaintiff was qualified to fly. (*Id.*). Both scheduled trainings were within two months of Plaintiff's termination. (*Id.*).

Plaintiff filed a complaint with the Equal Employment Opportunity Council ("EEOC") and was granted a right to sue on May 15, 2019. (*See* Notice of Right to Sue [ECF No. 7-1]). Plaintiff

4

filed her Complaint commencing this action on August 13, 2019. On November 4, 2019, Plaintiff filed a three-count Amended Complaint asserting claims of sex discrimination under both federal and Ohio law and aiding and abetting sex discrimination under Ohio law. (Am. Compl. ¶¶ 34–51). Plaintiff dismissed her claims against former Defendant Queen, so the only active claims are the federal and state law sex discrimination claims against NetJets. NetJets moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. (*See* Mot. to Dismiss [ECF No. 8]). Plaintiff opposes dismissal arguing that the Amended Complaint provides sufficient notice to the Defendant of her claims against it and complies with the Federal Rules of Civil Procedure. (*See* Response [ECF No. 10]).

**II.**

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleas factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12 in conjunction with Federal Rule of Civil Procedure 8(a), which requires a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than

5

create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, the complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Id.*; Fed. R. Civ. P. 8(a).

### III.

NetJets moves to dismiss the Amended Complaint asserting that, as a matter of law, Plaintiff has failed to sufficiently allege her sex discrimination claims. NetJets avers that Plaintiff failed to allege sufficient factual support of her assertion that she was treated different than her similarly situated male co-workers. (Mot. to Dismiss at 3–4). Plaintiff submits that she has properly pleaded her sex discrimination claims because she asserts that she has sufficiently alleged that her similarly situated male co-workers were treated more favorably than her. (Response at 7–8).

Plaintiff brings two claims of sex discrimination, one under federal law and one under Ohio law. (Am. Compl. ¶¶ 34–45). The pertinent portion of the United States Code states:

It shall be an unlawful employment practice for an employer–

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

42 U.S.C. § 2000e-2(1). And the relevant portion of Ohio's employment discrimination statute states:

6

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of the race color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment[.]

Ohio Rev. Code § 4112.02(A).

"[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42 U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 421 N.E.2d 128, 131 (Ohio 1981); *see also Noble v. Brink Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (stating same); *Martin v. Block Commc'ns*, No. L-16-1213, 2017 WL 1422889, at ¶ 25 (Ohio Ct. App. Apr. 12, 2017) ("Ohio courts hold that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to state-law discrimination claims under R.C. Chapter 4112."). Accordingly, the Court will analyze Plaintiff's federal and state law claims of sex discrimination together.

Courts analyze whether a plaintiff has properly pleaded a discrimination claim under the standard laid out in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002). This Court, in *Witte v. Rippe & Kingston Sys., Inc.*, 358 F. Supp. 2d 658 (S.D. Ohio 2005), thoroughly discussed these pleading requirements. As neither party cited either of these cases, it is necessary for the Court to give an overview of the *Swierkiewicz* Court's pleading requirement.

The *Swierkiewicz* plaintiff alleged that the defendant fired him because of his national origin and age, in violation of Title VII of the Civil Rights Act and the Age Discrimination Act in Employment, respectively. *Swierkiewicz,* 534 U.S. at 509. The district court dismissed the complaint finding that the plaintiff had failed to allege a prima facie case of discrimination because

7

"he had not adequately alleged the circumstances that support an inference of discrimination." *Id.* The appellate court affirmed the district court's dismissal. *Id.*

The Supreme Court, however, reversed and remanded the lower courts' findings and held that a plaintiff in an employment discrimination suit does not need to allege facts constituting a prima facie case under the *McDonnell Douglas* test but rather, such complaint "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508 (quoting Fed. R. Civ. P. 8(a)(2). In reaching this conclusion, the *Swierkiewicz* Court noted that the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading requirement[,]" and found that because direct evidence of discrimination could be unearthed during discovery, that it would be "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts that he [or she] may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* at 511–12. Ultimately, the *Swierkiewicz* Court found that requiring a plaintiff to plead the elements of the *McDonnell Douglas* prima facie case in order to survive a motion to dismiss would run afoul of Rule 8's pleading requirements and would unnecessarily impose a "heightened pleading standard for employment discrimination suits." *Id.* at 513, 515.

A plaintiff, therefore, need not plead facts sufficient to establish each of the *McDonnell Douglas* elements to survive a Rule 12 motion. *Witte*, 358 F. Supp. 2d at 668. Rather, a plaintiff must only plead "a short and plain statement of the claim" to constitute fair notice under Rule 8. *Id.*; *see also Corywell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175, 803 N.E.2d 781, 788–89 (Ohio 2017) (adopting *Swierkiewicz* and noting that Ohio Rule of Civil Procedure 8(A)(1) mirrors its federal counterpart verbatim).

8

Here, NetJets argues that the Court should dismiss Plaintiff's claims of sex discrimination because Plaintiff "does not compare herself to men with similar physical characteristics. She does not allege males of her height were reassigned while she was not, and she does not allege that males whose circumstances were equal or similar to hers were retained while she was not." (Mot. to Dismiss at 3–4).

NetJets' argument that Plaintiff has failed to demonstrate that she was treated differently than her similarly situated male co-workers is inapposite with the *Swierkiewicz* Court's holding and rationale, and, thus, fails for two reasons. First, *Swierkiewicz* makes it clear that the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading requirement." Plaintiff, therefore, is not required to plead each element of the *McDonnell Douglas* prima facie case to withstand Defendant's Motion to Dismiss. *See Swierkiewicz*, 534 U.S. at 511 ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standards that plaintiffs must satisfy in order to survive a motion to dismiss."). Under the *Swierkiewicz* standard, to satisfy Rule 8(a)(2)'s pleading requirements, a plaintiff must allege a short and plain statement of her claim sufficient to give a defendant "fair notice" of her claim and the grounds upon which it rests. *Id.* at 512 (citing *Conley*, 355 U.S. at 47). A plaintiff who satisfies this burden may survive a motion to dismiss if she states claims upon which relief could be granted. *Id.* at 514.

Second, the caselaw upon which NetJets relies is presently inapplicable given the procedural posture of this case. In support of its assertion that Plaintiff has failed to properly allege her sex discrimination claims, Defendant draws the Court's attention to two cases: *Lutz v. Ohio Dep't of Rehab. & Corr.*, No. 2:10-cv-877, 2011 U.S. Dist. LEXIS 120874, 2011 WL 4964977 (S.D. Ohio Oct. 19, 2011); and *Ross v. William Beaumont Hosp.*, 678 F. Supp. 655 (E.D. Mich.

9

1988). Neither case, however, is applicable to the motion currently pending before the Court. *Lutz* was before the Court on a motion for summary judgment. *Lutz*, 2011 WL 4964977, at *1. And the *Ross* opinion was issued after a jury returned an advisory verdict on the plaintiff's Title VII claim. *Ross*, 678 F. Supp. at 658. Thus, in both cases cited by NetJets, the court had the benefit of discovery prior to concluding that the plaintiff had failed to allege her discrimination claim in each respective case. Neither case, therefore, is applicable to the Court's decision on NetJets's motion to dismiss.

The Amended Complaint contains sufficient factual content that states a plausible claim for relief for disability discrimination. The Amended Complaint alleges that Plaintiff was a trained Pilot who had a type rating to fly two of Defendant's aircrafts. (Am. Compl. ¶¶ 7, 22). Plaintiff began NetJets' Phenom training in early February 2017 and she passed both the Garmin Prodigy training and the FAA's oral examination. (*Id.* ¶¶ 14, 16). Plaintiff then continued to simulator training for the Phenom. During one simulator training Plaintiff was unable to maintain control of the aircraft when one of the aircraft's engines failed because she was unable to apply adequate pressure to the rudder pedal. (*Id.* ¶ 19). After the simulation, Plaintiff informed her instructor of her difficulties and he stated that he had "never instructed on an airplane that required so much rudder to the floor to keep the aircraft controlled." (*Id.* ¶ 21). Plaintiff's instructor further told her that she was "simply too short" and that she couldn't "reach fully to the floor with the rudder pedals to control the airplane during engine operation." (*Id.*).

Further, in a phone call, Queen warned Plaintiff that she needed to ensure that she passed her next check ride because if she was too short to fly the Phenom, then she was also too short to fly any of NetJets's other airplanes. (*Id.* ¶ 22). Plaintiff reminded Queen that she was not too short to fly any of NetJets's other aircraft as "she had a type rating in at least two (2) of Defendant

10

NetJets' current fleet." (*Id.*). Queen replied that Plaintiff needed to "make the Phenom work." (*Id.*).

Ultimately, Plaintiff did not pass the FAA check ride because, when one of the engines failed, she was unable to fully push the rudder to floor due to her stature. (*Id.* ¶ 24). Following this failure, NetJets terminated Plaintiff's employment. (*Id.* ¶ 26). NetJets, however, did not terminate three male employees who were a part of the December 5, 2016 Phenom orientation class that were too tall to fly the Phenom. Rather, these three male employees were reassigned to other aircrafts. (*Id.* ¶ 28). Furthermore, prior to their reassignment, NetJets did not require any of Plaintiff's male co-workers to take an FAA check ride, like Plaintiff was required to do. (*Id.* ¶ 29).

Based upon these facts, Plaintiff has provided a short and plain statement providing NetJets with fair notice of the grounds of her sex discrimination claims. As such, Defendant's motion to dismiss Plaintiff's sex discrimination claims on the basis of her purported failure to allege that similarly situated unprotected co-workers were treated differently is denied.

## IV.

For the reasons stated herein, Defendant's Motion to Dismiss the Complaint (ECF No. 6) is **DENIED AS MOOT** and Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8) is **DENIED**.

**IT IS SO ORDERED.**

       /s/ Sarah D. Morrison  
      **SARAH D. MORRISON**  
      **UNITED STATES DISTRICT JUDGE**